# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

AARON BRIAN TAYLOR,

Plaintiff,

v                                        CASE NO. 5:17-cv-00023-Oc-02PRL

CHARLES L. LOCKETT, FNU LOU,
FNU GILLARD, FNU SPADE, and
H. LOPEZ,

Defendants.

_____/

# **O R D E R**

Plaintiff, a federal inmate proceeding pro se, initiated this case by filing a

civil rights complaint (Dkt. 1) in which he alleges that Defendant Spade violated

his Eighth Amendment rights and that all Defendants retaliated against him for

exercising his First Amendment right to complain about Defendant Spade's actions.

Defendants have now filed a motion to dismiss (Dkt. 45), arguing that Plaintiff's

complaint is due to be dismissed pursuant to Federal Rule of Civil Procedure

12(b)(6).  The Court gave Plaintiff multiple opportunities to file a response to the

motion to dismiss, but he has not done so.[1]  Accordingly, Defendants' motion to

dismiss is now ripe for decision.  After consideration, the Court determines that

Defendants' motion to dismiss is due to be granted.

## I.     BACKGROUND AND ALLEGATIONS OF PLAINTIFF'S COMPLAINT

For purposes of ruling on Defendants' Rule 12(b)(6) motion to dismiss, the

Court accepts as true the allegations of Plaintiff and applies the liberal pleading

standard for pro se litigants.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  On or

about January 14, 2015, Plaintiff was housed in the Special Housing Unit ("SHU")[2]

---

[1]Plaintiff's response to the motion was originally due in December 2017.  Plaintiff asked for more time to respond (Dkt. 47), and the Court granted that motion on December 13, 2017 (Dkt. 48).  As of July 26, 2018, though, Plaintiff still had not filed a response (despite having filed numerous other motions and other documents).  In ruling on several pending motions, the Court directed Plaintiff to file his response within 21 days.  Dkt. 73.  Plaintiff filed a "Motion for Clarification and Objection of All False Statements Submitted by Attorney Jeff Midde[n]dorf" (Dkt. 74), but he did not file a response to the motion to dismiss.  Accordingly, on August 23, 2018–some 8 months after his response was originally due–the Court ordered Plaintiff to show cause why this case should not be dismissed.  Dkt. 75.  Plaintiff filed a response to the Order to Show Cause (Dkt. 77) and a "supplemental motion" (Dkt. 76).  The Court addressed these documents (as well as other miscellaneous documents filed by Plaintiff) in its Order dated September 20, 2018.  Dkt. 78.  Plaintiff filed a motion to reconsider that Order (Dkt. 79), as well as a motion for clarification of the docket entry assigning this case to the undersigned as the presiding District Judge (Dkt. 81) and an affidavit in support of that motion (Dkt. 82).  Both of those motions have now been denied, Dkt. 83, and the only remaining pending motion is Defendants' motion to dismiss.

[2] Plaintiff does not explain what the SHU is, but he appears to be referring to a Special Housing Unit created in accordance with 28 C.F.R. §§ 541.20-541.33. "Special Housing Units (SHUs) are housing units in Bureau [of Prisons] institutions where inmates are securely separated from the general inmate population, and may be housed either

at USP Coleman-2.  Dkt. 1 at 46.[3]  That morning, Defendant Spade, who is a

corrections officer, removed Plaintiff from his cell for morning recreation and

searched him with a metal detector wand.  *Id.*  Defendant Spade brought the wand

up between Plaintiff's legs, and, when he reached Plaintiff's lower buttocks, he

pushed the wand "up between [Plaintiff's] buttocks to the top of [Plaintiff's]

buttocks and down between [Plaintiff's] buttocks, then repeated up [and] down

between [Plaintiff's] buttocks."  *Id.*  Plaintiff could feel his "issued shorts material

go between his buttocks due to Defendant Spade['s] use" of the metal detector

wand.  *Id.*

On March 11, 2015, Plaintiff was again housed in the SHU.  *Id.* at 48.

Defendant Spade and a female officer identified as "Ms. Clair" approached his cell

for morning recreation.  *Id.*  Plaintiff accepted recreation, and Defendant Spade

removed Plaintiff from his cell.  *Id.*  Despite the presence of Ms. Clair, Defendant

---

alone or with other inmates.  Special housing units help ensure the safety, security, and
orderly operation of correctional facilities, and protect the public, by providing alternative
housing assignments for inmates removed from the general population."  28 C.F.R. §
541.21.  An inmate can be placed in the SHU on "administrative detention status" when
necessary to ensure the safety, security, and orderly operation of correctional facilities or
to protect the public.  *Id.* § 521.22(a).  An inmate can also be placed in the SHU on
"disciplinary segregation status," which is a punitive status imposed by a Discipline
Hearing Officer as a sanction for committing prohibited acts.  *Id.* § 521.22(b).

[3]In this Order, citations to Plaintiff's complaint are to the page numbers assigned
when the document was filed in CM/ECF.

Spade committed "similar demeaning actions." *Id.* Again, Defendant Spade

brought the metal detector wand up between Plaintiff's legs "at the lower buttocks

and brought the instrument up between [his] buttocks to the point [Plaintiff] could

feel the materials of [his] short[s] pushed in–all the way up to the top of [his]

buttocks. And then back down." *Id.* at 48-49. When Ms. Clair questioned

Defendant Spade's actions, Defendant Spade put the wand at Plaintiff's "anal area,

pushing the instrument in some to which [Plaintiff] could feel [his] shorts pushed

in more and saying, 'This where inmates hide things.'" *Id.* at 49.

Soon after, Plaintiff demonstrated Defendant Spade's search technique to

Defendant S.I.S. Lieutenant Gillard by putting his cuffed hands up between his

buttocks. *Id.* at 49-50. He also asked Lieutenant Gillard if staff were supposed to

use the metal detector in that manner. *Id.* at 50. Defendant Gillard told Plaintiff

that he would speak to Defendant Spade about the issue. *Id.* After morning

recreation, Defendant Gillard told Plaintiff that he spoke to Defendant Spade but

gave no specifics about the conversation. *Id.* Defendant Gillard then "properly

wanded [Plaintiff] over [his] person without touching [Plaintif]." *Id.* After

Plaintiff returned to his cell, he realized he would continue to be physically

violated if he did not complain to staff that had the power to stop Defendant Spade

from violating him sexually. *Id.* at 51. Plaintiff "made contact with psychology

staff Dr. Sierra after trying to speak with these staff (psychology) for 6 days." *Id.* On March 16, 2015, Dr. Sierra came to Plaintiff's cell. *Id.* Plaintiff handed him two envelopes marked "sensitive" that related to Defendant Spade "violating [Plaintiff] sexually." *Id.* One was addressed to "psychology," and the other was addressed to Defendant Warden Lockett. *Id.* Plaintiff asked Dr. Sierra to give the envelope to Defendant Lockett. *Id.* About 30 minutes later, SHU staff pulled Plaintiff from his cell and took him to another room in the SHU, where he saw a psychologist, Dr. Kennedy. *Id.* at 52. Dr. Kennedy had the letter and envelope Plaintiff had earlier given to Dr. Sierra in his hand. *Id.* Dr. Kennedy told Plaintiff that this was a serious matter, and Plaintiff told Dr. Kennedy about both of the incidents with Defendant Spade. *Id.* Dr. Kennedy told Plaintiff that he contacted the "S.I.S. (investigation) Department about [Plaintiff's] complaint." *Id.* Plaintiff told Dr. Kennedy that he had told Defendant Gillard about the sexual abuse by Defendant Spade but that Defendant Gillard did not take the incident seriously. *Id.* at 52-53.

At that point, Defendant Gillard arrived in the SHU at Dr. Kennedy's request. *Id.* at 52. Plaintiff repeated his account of the two incidents with Defendant Spade for Defendant Gillard. *Id.* at 53. Defendant Gillard then asked

Plaintiff for his name and inmate number and left the room. *Id.*[4]  About two hours later, two correctional officers pulled Plaintiff from his cell and took him to the medical department. *Id.*  Defendant Dr. H. Lopez then physically examined Plaintiff. *Id.*  Every time Plaintiff tried to tell Defendant Lopez about the sexual abuse committed by Defendant Spade, Defendant Lopez interrupted Plaintiff. *Id.* at 54.  Plaintiff's time with Defendant Lopez was "hostile," and Defendant Lopez continued to prevent Plaintiff from explaining what Defendant Spade had done. *Id.* Plaintiff became stressed to exhaustion, so he gave in and answered all of Defendant Lopez's physical questions. *Id.*

On March 20, 2015, Plaintiff gave Defendant Lockett a "large legal [envelope] marked 'sensitive BP-9.'" *Id.*[5]   Defendant Lockett opened and read the contents of Plaintiff's BP-9 complaint. *Id.*  After he read the complaint, Defendant Lockett "tore apart the blue forms of the complaint and threw it under [Plaintiff's cell] door." *Id.*  Then he put the white colored pages of the BP-9 form in the large

---

[4]The complaint actually says that "Defendant S.I.S. Kennedy" asked for Plaintiff's name and number, but, in context, it appears that this should be a reference to Defendant Gillard.

[5]Plaintiff does not explicitly explain what a "BP-9" is, but it appears to be a Bureau of Prisons administrative grievance form.

yellow envelope and walked away. *Id.*[6]  About five minutes later Defendant

Captain Leu[7] stopped at Plaintiff's cell. *Id.*  Plaintiff explained that Defendant

Lockett tore apart his sensitive BP-9 complaint and showed Defendant Leu the

blue pages of the complaint. *Id.*  Defendant Leu asked for the blue forms and

walked away. *Id.* at 54-55.  Plaintiff never saw the completed sensitive BP-9

complaint again. *Id.* at 55.  On March 27, 2015, Plaintiff asked Defendant Lockett

why he tore apart Plaintiff's "sensitive BP-9 complaint on sexual abuse/assault."

*Id.* at 55.  Defendant Lockett said that the complaint was not sensitive and refused

to explain why he tore apart the complaint. *Id.*  Defendants Lockett and Leu

prevented Plaintiff "from filing BP-9 until after [he was] transfer[r]ed to U.S.P.

Canaan 2 months later." *Id.* at 56.

 Later, Plaintiff obtained a copy of Defendant Lopez's report of the medical

examination he performed on Plaintiff on March 16, 2015. *Id.* at 55.  Defendant

Lopez's description of the events with Defendant Spade differed from what

Plaintiff wrote in his letters to Dr. Kennedy and Defendant Lockett. *Id.*

Specifically, Defendant Lopez wrote, "The CO was passing the wand on

---

[6]Again, Plaintiff does not explicitly explain the nature of the BP-9 form, but it appears based on his description that it consists of multiple pages, with one of the pages being blue and the others being white.

[7]Plaintiff spells the name "Lou," but Defendants assert that the proper spelling is "Leu," and Plaintiff has used that spelling in subsequent filings.

[Plaintiff's] backside on the buttocks side he put the wand in the anus . . . ." *Id.*
Prior to Defendant Lopez's examination, however, Plaintiff had written and
verbally stated that the metal detector wand was pushed up and down between his
buttocks and that the wand was put "at the area of the anal (shorts on) and pushed
inward–not in the anal." *Id.* Defendant Lopez also titled the report incorrectly. *Id.*

Defendant Spade was the property officer in the SHU at USP Coleman-2
during the period before Plaintiff's transfer to USP Canaan. *Id.* at 56. Defendant
Spade vandalized Plaintiff's personal property with green shampoo. *Id.* at 56, 59.
Some of Plaintiff's personal property (including, apparently, an MP-3 player, Sony
headphones, a legal dictionary, and legal materials related to Plaintiff's first
conviction) also went missing while under Defendant Spade's control. *Id.* at 56.[8]
Defendants Lockett, Leu, and Gillard knew that Defendnant Spade was a property
officer in the SHU and could retaliate against Plaintiff and his personal property by
destroying his property and harming his person. *Id.* at 56-57.

Defendants Lockett, Leu, and Gillard knew that Plaintiff was placed in a cell
with a younger, big, strong sexual predator after Plaintiff reported sexual

---

[8]It is not clear whether Plaintiff is alleging that Defendant Spade destroyed the
property, stole the property, or simply lost it. *See, e.g.*, Dkt. 1 at 59 ("The actions of
Defendant Spade, for my missing/stolen personal property . . . violates my 1st Amend.
Rights.").

abuse/assault by Defendant Spade. *Id.* at 57. They knew that Plaintiff was complaining about being put in a cell with a "sexual pred[a]tor, and stalker of a female officer at U.S.P. Coleman-2 during this period." *Id.* They knew that Plaintiff had complained to psychologists of being deprived of sleep by this cellmate during this period. *Id.* Plaintiff lived in fear the whole time he was housed with this cellmate. *Id.* SHU staff and psychologists ignored his complaints. *Id.*

Defendant Lockett's tearing apart of Plaintiff's BP-9 form in front of other staff was "intimidating and provided carte blanche to Defendant Spade to harm [Plaintiff's] property in [the] property room . . . ." *Id.* "Other staff knew . . . Defendant Lockett tore apart [Plaintiff's] reporting of sexual abuse/assault. Thus [Plaintiff] was moved into a cell with a younger, big strong sexual predator and stalker of female staff . . . ." *Id.*

Based on these allegations, Plaintiff alleges that "[t]he actions of Defendant Spade repeated sexual abuse/assault, with mali[ci]ous and sadistic intent" violated his Eighth Amendment rights. *Id.* at 58. He also alleges that all Defendants violated his First Amendment rights by retaliating against him for complaining about Defendant Spade's improper use of the metal detector. *Id.* at 58-60.

Specifically, Plaintiff alleges that Defendants Lockett, Leu, and Gillard violated his First Amendment rights when they failed to protect his property from Defendant Spade and failed to protect him from harm (specifically, sleep deprivation) caused by his fear of the sexual predator with whom he was housed. *Id.* He alleges that these actions were taken in retaliation for exercising his First Amendment rights. *Id.*

Plaintiff alleges that Defendant Spade mistreated his personal property in retaliation for reporting Defendant Spade's sexual abuse/assault of Plaintiff. *Id.* at 56. He alleges that Defendant Gillard refused to follow the proper protocol for reporting allegations of sexual abuse/assault and that Defendant Gillard's actions were designed to prevent and interfere with his reporting of sexual abuse/assault. *Id.* at 55-56. He alleges that Defendant Gillard acted as he did in retaliation for Plaintiff's reporting of Defendant Spade's sexual abuse/assault of Plaintiff. *Id.* at 56. He alleges that Defendant Lopez falsified his report of sexual abuse/assault by Defendant Spade to undermine Plaintiff's credibility and in retaliation for Plaintiff's exercise of his First Amendment rights. *Id.* at 59.

Plaintiff alleges that Defendants Leu and Lockett retaliated against him for complaining about Defendant Spade. *Id.* at 58. He alleges that Defendant Leu violated his First Amendment rights when he "retrieve[d] the blue forms of

[Plaintiff's] complaint . . . making certain the protective activity is obstructed, and disappeared . . . ." *Id.* at 59. He alleges that Defendant Lockett violated his First Amendment rights when he tore apart Plaintiff's "sensitive BP-9 complaint of sexual abuse/assault." *Id.* He asks that the Court award him compensatory and punitive damages and for "all/any relief available." *Id.* at 58, 60.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). When considering a Rule 12(b)(6) motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).[9]

_____

[9]Defendants attached two exhibits to their motion to dismiss. Exhibit 2 (Dkt. 45-1 at 8-25) included a printout of all the administrative remedies Plaintiff has filed during his incarceration. In their motion, Defendants relied on that exhibit to contradict Plaintiff's claim that he was not able to file a BP-9 form reporting Defendant Spade's conduct until he was transferred to USP Canaan. Dkt. 45 at 12. The Court has already concluded that it will not consider Exhibit 2. Dkt. 73 at 5-8. Exhibit 1 to the motion to dismiss is a report of information about Plaintiff, including the crimes of which he was convicted and his sentences. Dkt. 45-1 at 3-6. Although the Court has already concluded that it would

Moreover, the Court may dismiss a cause of action when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *See Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).  Likewise, a complaint is subject to dismissal for failure to state a claim when "its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).

## III.   DISCUSSION

Defendants move to dismiss Plaintiff's claims arguing: (1) Defendants are entitled to qualified immunity; and (2) Plaintiff's claims are barred by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(e).  The Court first discusses Plaintiff's Eighth Amendment claim and then discusses his First Amendment claims.

### A.   Eighth Amendment Claim

Plaintiff's Eighth Amendment claim against Defendant Spade for his inappropriate use of the metal detector wand is due to be dismissed because, as

_____

be permissible for the Court to consider that document without converting the motion to dismiss to a motion for summary judgment (Dkts. 73, 92), the Court finds that Exhibit 1 is not relevant to the motion to dismiss.  Thus, the Court need not consider it.

discussed below, Defendant Spade is entitled to qualified immunity, the claim is barred by the PLRA, and the *Bivens* remedy does not extend to this claim.

### 1.    Qualified Immunity[10]

First, as Defendants argue, the Eighth Amendment claim is due to be dismissed because Defendant Spade is entitled to qualified immunity.  Qualified immunity shields government officials from civil suits in their individual capacities when they perform discretionary functions.  *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007) (citations omitted).  The protection attaches unless the officials' conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity protects all but the "plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Once an official demonstrates that his actions were within the scope of his discretionary authority, the plaintiff can only overcome qualified

---

[10]Although he did not file a response to Defendants' motion to dismiss, Plaintiff did offer some arguments regarding Defendants' qualified immunity defense in the motion docketed at Docket Number 72.  Dkt. 72 at 10-14.  Because Plaintiff is proceeding pro se, the Court has considered those arguments, but they do not change the conclusions reached here.  Notably, there is nothing inappropriate about deciding questions of qualified immunity on a motion to dismiss in an appropriate case.  *Cottone*, 326 F.3d at 1357. Indeed, the Eleventh Circuit has instructed that the issue of qualified immunity should be decided "as early in the lawsuit as possible" because it is a defense not only from liability, but from suit.  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation and citation omitted).

immunity by showing that (1) the defendant violated a constitutional right; and (2) this right was clearly established at the time of the alleged violation. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

Here, Defendant Spade was conducting a routine search for contraband and was, thus, acting within the scope of his discretionary authority when he searched Plaintiff. *See id.* at 1265 (to determine whether an official was exercising discretionary authority, the court asks whether the government employee was "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."). The allegations of Plaintiff's complaint do not, however, plausibly establish that Defendant Spade violated his Eighth Amendment rights.

While "severe or repetitive sexual abuse of a prisoner by a prison official" can violate the Constitution, *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006) (citations omitted), it is equally true that not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). To allege a violation of Eighth Amendment rights, a complaint must state facts that establish an "objectively serious injury." *Washington v. Harris*, 186 F. App'x 865, 865 (11th Cir. 2006) (cited as persuasive authority). Assaults that result in only *de minimis* harm do not rise to the level of

constitutional violations unless the conduct that was "repugnant to the conscience of mankind." *Id.* (quoting *Hudson*, 503 U.S. at 10).

Other than Plaintiff's conclusory labelling of Defendant Spade's actions as "sexual," there is no reason to believe that the actions were, in fact, sexual in nature. And, even if they were, Defendant Spade's alleged actions were simply not severe enough to constitute a violation of the Eighth Amendment. Indeed, courts have found that the Eighth Amendment was not violated in cases with allegations similar to or more severe than those stated in Plaintiff's complaint. *See, e.g., id.* at 865-66 (no Eighth Amendment violation and defendant entitled to qualified immunity where defendant allegedly crept up behind plaintiff, grabbed his genitals, kissed him on the mouth, and threatened to perform oral sex on him); *Major v. Toole,* No. 5:15-cv-483 MTT, 2018 WL 5811484, at *1, 3 (M.D. Ga. Nov. 6, 2018) (granting motion for summary judgment on Eighth Amendment claim where plaintiff alleged that, after conducting visual search of anal cavity, prison guard rubbed the area between plaintiff's buttocks); *Jones v. Culinary Manager II*, 30 F. Supp. 2d 491, 493, 497-98 (E.D. Pa. 1998) (no Eighth Amendment violation where plaintiff alleged that guard pinned plaintiff down on boxes and ground his pelvis against plaintiff's buttocks). While Plaintiff may have found Defendant Spade's search technique to be offensive, it did not result in serious injury and is not

"repugnant to the conscience of mankind."  And, while Defendant Spade's search technique may not have been the norm at FCC Coleman-2, Plaintiff has not pointed the Court to any caselaw establishing that Defendant Spade's actions violated a clearly established constitutional right.  *See, e.g.*,  *Major*, 2018 WL 5811484, at *3 (no relevant case establishing Eighth Amendment violation where defendant rubbed the area between plaintiff's buttocks after an anal cavity search).  For both these reasons, the Eighth Amendment claim is due to be dismissed.

2.     PLRA Requirement of Physical Injury or Sexual Act

Moreover, even if Defendant Spade were not entitled to qualified immunity, Plaintiff's claims for compensatory and punitive damages are barred by the PLRA. The PLRA provides, in relevant part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e).  Section 1997e(e) applies to claims for compensatory and punitive damages, but it does not bar claims for nominal damages.  *Brooks v. Warden*, 800 F.3d 1295, 1307-08 (11th Cir. 2015).  Section 1997e(e) is an affirmative defense, but a district court may *sua sponte* dismiss a claim where the

allegations show that this defense would bar recovery. *Douglas v. Yates*, 535 F.3d 1316, 1320-21 (11th Cir. 2008).

Plaintiff was confined at USP Canaan at the time he filed this action (Dkt. 1 at 2) and is currently confined at USP McCreary (Dkt. 44). Thus, he cannot bring a federal civil action without a prior showing of physical injury or the commission of a sexual act.

Plaintiff has not alleged that Defendant Spade's actions resulted in physical injuries. He also has not alleged a predicate "sexual act." Under the PLRA, a "sexual act" is defined, in relevant part, as "the penetration, however slight, of the anal . . . opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(C). Plaintiff alleges that, on one occasion, Defendant Spade "put the [metal detector wand] at [his] anal area, pushing the instrument in some to which [Plaintiff] could feel his shorts pushed in more . . . ." Dkt. 1 at 49. He also, however, complains that Defendant Lopez incorrectly reported Plaintiff's complaints about Defendant Spade when he wrote, "The CO was passing the wand on [Plaintiff's] backside on the buttocks side he put the wand in the anus . . . . " *Id.* at 55. As Plaintiff explains it, though, he did not complain that the metal detector wand was placed in his anus: "Prior to Defendant Lopez

examination, I written and verbally stated that wand was pushed up & down between my buttocks and that the wand was put at the area of the anal (shorts on) and pushed inward–not in the anal." *Id.*  Thus, Plaintiff's complaint establishes that Defendant Spade did not penetrate his anus (even slightly).  In the absence of a physical injury or sexual act, Plaintiff's Eighth Amendment retaliation claims for compensatory and punitive damages are barred by the PLRA.

3.     <u>Existence of *Bivens* Remedy</u>

Even if Plaintiff's Eighth Amendment claims are not barred by the PLRA (and to the extent that Plaintiff's request for "all/any relief available" can be liberally construed as a request for nominal damages), they are due to be dismissed because the Eighth Amendment does not imply a right of action for damages in circumstances such as these.[11]  Plaintiff brings a claim for monetary damages against Defendants in their individual capacities for violations of the federal

---

[11]Although Defendants did not raise this issue in their motion to dismiss, it is appropriate for the Court to address it *sua sponte*.  *See Rager v. Augustine*, __ F. App'x __, No. 18-10834, 2019 WL 413750, at *5 (11th Cir. Feb. 1, 2019) ("*Rager II*") (cited as persuasive authority) (affirming district court's *sua sponte* dismissal of First Amendment retaliation claims against defendant warden because *Bivens* did not create a remedy); *see also Bistrian v. Levi*, 912 F.3d 79, 89 (3d Cir. 2018) (court may consider the existence of a *Bivens* remedy in the interest of justice even if defendant does not raise the issue because assuming the existence of a *Bivens* cause of action without deciding the issue can risk needless expenditure of the parties' and the court's time and resources).

Constitution.[12]  That is, he is attempting to bring a so-called "*Bivens*" claim.  In

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.

388 (1971), the United States Supreme Court recognized an implied right of action

for damages against federal officers for violations of the Fourth Amendment.

Since that time, however, the Court has extended the *Bivens* remedy in only two

other contexts: a Fifth Amendment equal protection claim for sex discrimination in

employment and an Eighth Amendment claim against federal prison officials for

failure to provide medical treatment.  *See Davis v. Passman*, 442 U.S. 228, 248-49

(1979) (Fifth Amendment); *Carlson v. Green*, 446 U.S. 14, 19-23 (1980) (Eighth

Amendment).  The Supreme Court has repeatedly refused to extend the *Bivens*

remedy in other contexts, including a claim for violation of the First Amendment.

*See Bush v. Lucas*, 462 U.S. 367, 390 (1983); *see also Rager v. Augustine*, No.

5:15cv35/MW/EMT, 2017 WL 6627416, at *15 (N.D. Fla. Nov. 8, 2017) ("*Rager

I*") (collecting cases in which Supreme Court refused to create a *Bivens* remedy),

---

[12]The complaint also requests "all/any relief available."  Dkt. 1 at 60.  To the extent
this general statement can be construed as a request for injunctive or declaratory relief,
such relief is unavailable because Plaintiff is no longer housed at USP Coleman-2 and
there is no reason to believe he will be confined there again under the same
circumstances.  Dkt. 1 at 2 (noting that Plaintiff was housed at USP Canaan); Dkt. 44
(providing new address at USP McCreary).  As such, any claims for declaratory or
injunctive relief are moot.  *See Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007)
(citations omitted) ("The general rule in our circuit is that a transfer or a release of a
prisoner from prison will moot that prisoner's claims for injunctive and declaratory
relief."), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011).

*report and recommendation adopted by* 2017 WL 6627784 (N.D. Fla. Dec. 28, 2017), *aff'd*, *Rager II*, 2019 WL 413750.

In *Ziglar v. Abassi*, __ U.S. __, 137 S. Ct. 1843 (2017), the Supreme Court recently clarified how courts should proceed when asked to recognize a *Bivens* remedy. The Court emphasized that it has consistently refused to extend *Bivens* to any new context and that expanding the *Bivens* remedy is "now a 'disfavored' judicial activity." *Id.* at 1857 (internal quotation marks and citation omitted). It explained that expanding the *Bivens* remedy implicates separation-of-powers concerns and that, in most cases, Congress should decide whether to provide a remedy. *Id.* Thus, when confronted with a *Bivens* claim, a court must first ask whether the claim arises in a new *Bivens* context–that is, whether the case is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court. *Id.* at 1859. A case might present a novel *Bivens* context

> because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem . . . to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of other potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

If the case presents a novel *Bivens* context, the court must determine whether there are "special factors counselling hesitation." *Id.* at 1857 (internal quotation marks and citation omitted). The Supreme Court has not defined the phrase, but the inquiry must concentrate on whether the judiciary is well suited, absent action from Congress, "to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. To be a "special factor counselling hesitation," a factor "must cause a court to hesitate before answering that question in the affirmative." *Id.* at 1858. If there is an alternative remedial structure, that alone may prevent extending the *Bivens* remedy. *Id.* In general, "if there are sound reasons to think Congress might doubt the efficacy of a damages remedy as part of the system for enforcing the law and correcting a wrong," the courts must refrain from extending the *Bivens* remedy. *Id.* In making this assessment, the court should consider "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself . . . ." *Id.* The court should also consider whether Congress "has designed its regulatory authority in a guarded way, making it less likely that Congress would want the judiciary to interfere." *Id.*

Upon consideration, the Court concludes that Plaintiff's Eighth Amendment claim presents a new *Bivens* context. Although the Supreme Court extended the

*Bivens* remedy to an Eighth Amendment claim in the context of a claim based on the failure to provide adequate medical treatment in *Carlson v. Green*, 446 U.S. at 16, the facts of *Carlson* differ meaningfully from the facts of Plaintiff's Eighth Amendment claim. Thus, his claim presents a new *Bivens* context. *See, e.g.*, *Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1170 (E.D. Cal. 2018) (Eighth Amendment excessive force claim by prisoner presented new *Bivens* context).

The next issue is whether special factors counsel hesitation in extending the *Bivens* remedy, including the existence of alternative remedies. Specifically, Plaintiff could have filed a civil rights action seeking injunctive relief enjoining the allegedly unconstitutional conduct. *See Rager I*, 2017 WL 6627416 at *18 (declining to extend *Bivens* remedy for First Amendment retaliation claim in part because plaintiff could have pursued alternative remedy of injunctive relief), *report and recommendation adopted by* 2017 WL 6622784.[13]  And, although Defendants Lockett and Leu allegedly prevented Plaintiff from filing a BP-9 about Defendant

---

[13]The fact that Defendants Lockett and Leu allegedly prevented Plaintiff from filing an administrative complaint (and, thus, exhausting administrative remedies) until he was transferred to USP Canaan does not change this conclusion. This is because the Eleventh Circuit has held that retaliation or threats of retaliation may make administrative remedies unavailable to an inmate for purposes of exhaustion purposes, thus permitting him to proceed with a civil rights action. *Rager I*, 2017 WL 6627416, at *18*, report and recommendation adopted by* 2017 WL 6622784 (citing *Turner v. Burnside*, 541 F.3d 1077, 1084-85 (11th Cir. 2008); *Bryant v. Rich*, 530 F.3d 1368, 1373 n.6 (11th Cir. 2008)).

Spade's conduct for two months, Plaintiff was ultimately transferred away from

USP Coleman-2. He attached multiple grievances to his complaint (Dkt. 1 at 7-

43), which demonstrates that he ultimately did have access to the Bureau of

Prison's administrative grievance process. Multiple courts have found that the

BOP's grievance process is an alternative remedy that cuts against extending the

*Bivens* remedy. *See, e.g.*, *Atkinson v. Broe*, No. 15-cv-386-wmc, 2019 WL

231754, at *3-4 (W.D. Wis. Jan. 16, 2019); *Muhammad v. Gehrke*, No. 2:15-cv-

00334-WTL-MJD, 2018 WL 1334936, at *4 (S.D. Ind. Mar. 15, 2018); *Andrews v.

Miner*, 301 F. Supp. 3d 1128, 1134 (N.D. Ala. 2017).[14]

But even if Plaintiff did not have alternative remedies available to him, the

Court concludes that other special factors counsel hesitation. First, "legislative

action suggesting that Congress does not want a damages remedy is itself a factor

counseling hesitation." *Abassi*, 137 S. Ct. at 1865. This case presents such a

---

[14]The Court recognizes that an action for injunctive relief would not have provided
money damages and would not have provided a remedy for past harms. Nonetheless, it
appears that alternative remedies can bar extension of the *Bivens* remedy even if the
alternative remedies are less comprehensive than those available in a *Bivens* action. *See,
e.g.*, *Bush*, 462 U.S. at 372-73, 386-90 (declining to extend *Bivens* remedy to First
Amendment claim arising out of employment relationship because the civil service rules
provided a comprehensive system for addressing plaintiff's claim despite the fact that
plaintiff arguably could not obtain all the remedies he could have recovered in a *Bivens*
action).

situation where legislative action suggests that Congress does not want a damages

remedy.  As noted by the Supreme Court in *Abassi*:

> Some 15 years after *Carlson* [*v. Green*] was decided,
> Congress passed the [PLRA], which made
> comprehensive changes to the way prisoner abuse claims
> must be brought in federal court.  So it seems clear that
> Congress had specific occasion to consider the matter of
> prisoner abuse and to consider the proper way to remedy
> those wrongs.  This Court has said in dicta that the Act's
> exhaustion requirements would apply to *Bivens* suits.
> But the Act itself does not provide for a standalone
> damages remedy against federal jailers.  It could be
> argued that this suggests Congress chose not to extend
> the *Carlson* damages remedy to cases involving other
> types of prisoner mistreatment.

*Id.* (internal citations omitted).  While Congress's failure to create a damages

remedy is not definitive, the fact remains that Congress has been active in the area

of prisoners' rights and has not created a damages remedy.  This is enough to

"cause [the Court] to hesitate" and cuts against extending the *Bivens* remedy to

Plaintiff's case.  *See, e.g.*, *Rager I*,  2017 WL 6627416, at *18-19 (refusing to

extend *Bivens* remedy to First Amendment retaliation claim in part because PLRA

does not provide for standalone damages remedy), *report and recommendation*

*adopted by* 2017 WL 6622784; *Badley v. Granger*, No. 2:17-cv-00041-JMS-DLP,

2018 WL 3022653, at *4 (S.D. Ind. June 18, 2018) (same).

In addition, Defendant Spade was conducting a metal detector search for contraband when he committed the alleged Eighth Amendment violations. *See* Dkt. 1 at 49 ("This where inmates hide things."). Eighth Amendment claims that involve policies and practices related to searches for contraband should be treated with particular caution because they implicate the ability of prison officials to engage in such searches and secure their prisons. *Cf. Morgan v. Shivers*, No. 1:14-cv-7921-GHW, 2018 WL 618451, at *6 (S.D.N.Y. Jan. 29, 2018) (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979); *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 327-28 (2012)) (declining to extend *Bivens* remedy for Fifth Amendment excessive force claim in pretrial detention context where plaintiff alleged that contraband was forcibly removed from his anal cavity, causing pain and bleeding). Congress is better suited than the judiciary to "balance the challenges prison administrators and officers face in maintaining prison security against the expansion of the private right of action for damages." *Id.*

Since *Abassi*, some courts have refused to extend the *Bivens* remedy to excessive force claims. *See, e.g.*, *Hunt*, 336 F. Supp. 3d at 1170 (declining to extended *Bivens* remedy to Eighth Amendment excessive force claim where plaintiff alleged that prison guards beat him on more than one occasion); *Abdoulaye v. Cimaglia*, No. 15-cv-4921(PKC), 2018 WL 1890488, at *6-7

(S.D.N.Y. Mar. 30, 2018) (declining to extend *Bivens* remedy to Fifth Amendment excessive force claim by pretrial detainee who alleged, among other things, that a U.S. Marshal pushed his wheelchair into a wall, causing pain and injuries); *Morgan*, 2018 WL 618451, at *6. On the facts of this case, the Court agrees that the *Bivens* remedy should not be extended to Plaintiff's Eighth Amendment claim against Defendant Spade. This is a defect that cannot be cured by amendment. Accordingly, Defendants' motion to dismiss the Eighth Amendment claim is due to be granted.

## B.    First Amendment Claims

Generally, Plaintiff contends that Defendants retaliated against him for complaining about Defendant Spade, thereby violating the First Amendment.[15]

---

[15]Plaintiff frames his complaint about Defendants Lockett and Leu's interference with his filing a grievance as a First Amendment retaliation claim. Construing the complaint liberally, though, it is possible that Plaintiff is also attempting to assert a due process claim based on the apparent destruction of his "sensitive BP-9 complaint" and the resulting lack of access to the prison's grievance system. To the extent that he does, such a claim is due to be dismissed for the same reasons as the First Amendment claim. In addition, prisoners do not have a constitutionally protected liberty interest in an inmate grievance process. *See, e.g.*, *Dunn v. Martin*, 178 F. App'x 876, 878 (11th Cir. 2006) (cited as persuasive authority); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (collecting cases). While prisoners have a constitutional right to seek redress of government grievances, it is the right of access to the courts. *Massey*, 259 F.3d at 647 (citation omitted). And the right of access to the courts was not compromised here because Defendants Lockett and Leu's apparent destruction of the "sensitive BP-9 complaint" did not prevent Plaintiff from timely filing this lawsuit and presenting his case. *See, e.g.*, *Rager I*, 2017 WL 6627416, at *23, *report and recommendation adopted by* 2017 WL  6627784.

Defendants contend that Plaintiff's claims are barred by the PLRA and that Defendants are entitled to qualified immunity because Plaintiff has not adequately alleged that the First Amendment was violated. Dkt. 45. The Court concludes that Plaintiff's First Amendment claims are due to be dismissed because they are barred by the PLRA and because the *Bivens* remedy does not extend to the facts of this claim.

First, as explained above, Plaintiff cannot pursue a claim for compensatory and punitive damages under the PLRA because Defendant Spade's conduct did not result in a physical injury to Plaintiff[16] and did not rise to the level of a "sexual act" within the meaning of the PLRA.[17]

_____

[16]The closest Plaintiff comes to an allegation of a physical injury is his claim that he was "deprived of sleep" because he was afraid of his sexual predator cellmate. Courts have found that similar allegations do not amount to a "physical injury" for purposes of the PLRA. *See, e.g.*, *Chatham v. Adcock*, 334 F. App'x 281, 285 (11th Cir. 2009) (cited as persuasive authority) (complaints of anxiousness, nausea, nightmares, hallucinations, and increase in blood pressure not enough to satisfy physical injury requirement); *Sneed v. Hunt Cty. Med. Dep't*, No. 3-05-cv-2032-H, 2006 WL 536604, at *3 (N.D. Tex. Jan. 31, 2006) (considering discomfort to mental health, lack of sleep, and anxiety attacks insufficient to satisfy physical injury requirement).

[17]None of Defendants' alleged retaliatory acts rise to the level of a physical injury or a sexual act. Plaintiff does, however, allege that Defendants retaliated against him because he complained about Defendant Spade's improper use of the metal detector. It is not entirely clear that Plaintiff can "bootstrap" the potential physical injury or sexual act at issue in his Eighth Amendment claim to his retaliation claims. *See Rager I*, 2017 WL 6627416, at *8, 14 n.5, 22 (dismissing claims for compensatory and punitive damages against warden for First Amendment retaliation where plaintiff alleged that warden retaliated against him for filing grievances concerning, among other things, an alleged use of excessive force by sending a lieutenant to meet with plaintiff and threaten him to make

Second, even if Plaintiff's First Amendment retaliation claims were not barred by the PLRA (and to the extent his complaint can be liberally construed to state a claim for nominal damages), they would be barred because the Court concludes that there is no *Bivens* remedy in this context. The Court finds that Plaintiff's First Amendment retaliation claims present a novel *Bivens* context. The Supreme Court has never recognized a *Bivens* remedy for violations of the First Amendment. *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). Moreover, the facts of Plaintiff's retaliation claims differ from the Fourth Amendment unreasonable search and seizure claim at issue in *Bivens*, the gender discrimination claim in *Davis*, and the deliberate medical indifference claim in *Carlson*. Thus, this case presents a new *Bivens* context. *See, e.g.*, *Atkinson*, 2019 WL 231754, at *2 (concluding that plaintiff's First Amendment retaliation claims presented new *Bivens* context); *Rager I*, 2017 WL 6627416, at *17 (plaintiff's claim that defendants violated the First Amendment by retaliating against him for filing

---

the grievances "go away"), *report and recommendation adopted by* 2017 WL 6627784, *aff'd*, 2019 WL 413750, at *5 (affirming dismissal for lack of physical injury because plaintiff did not allege that warden's actions in sending lieutenant to threaten plaintiff to persuade him to drop his grievances "were related to a physical injury or a sexual act"). The Court need not, however, reach this issue because–even if such bootstrapping is allowed–Plaintiff's allegations show that Defendant Spade's actions do not rise to the level of a physical injury or sexual act.

internal grievances presented a new *Bivens* context), *report and recommendation adopted by* 2017 WL 6622784.

The Court also finds that Plaintiff had alternative remedies available and that other special factors counsel hesitation. As explained above, Plaintiff arguably had alternative remedies available to him in the form of a suit for injunctive relief and the BOP grievance process. And, even if Plaintiff did not have alternative remedies, the Court also finds that other special factors counsel hesitation. As with Plaintiff's Eighth Amendment claim, it is notable that Congress did not provide a standalone damages remedy when it enacted the PLRA.

In addition, the particular nature of Plaintiff's retaliation claim counsels hesitation. Here, Plaintiff alleges that he complained about sexual abuse/assault and that, afterward, a number of negative events occurred–including damage to his personal property and his placement in a cell with a sexually violent predator. He attributes all of these things to retaliation on Defendants' part. Retaliation claims implicate a defendant's state of mind, which is rarely susceptible of concrete proof. As a result retaliation claims are "easily fabricated." *Bistrian v. Levi*, 912 F.3d 79, 96 (3d Cir. 2018). By its nature, life in a federal prison can be harsh. Recognizing a *Bivens* remedy for First Amendment retaliation claims could lead to the unwanted result of inmates filing grievances against correctional officers and then

claiming that any negative action that followed was a result of retaliatory animus. *Andrews*, 301 F. Supp. 3d at 1135. The costs of such actions would be high. *Id.* This is another factor counselling hesitation. *Id.*

Finally, the Court notes that, since *Abassi*, the majority of courts have declined to extend the *Bivens* remedy to First Amendment claims. *See Atkinson*, 2019 WL 231754, at *5 (collecting cases); *see also Rager II*, 2019 WL 413750, at *5 ("[I]t is by no means clear that a damages remedy is warranted for a First Amendment retaliation claim like this one."). On the facts of this case, the Court agrees that it is not appropriate to extend the *Bivens* remedy to Plaintiff's First Amendment retaliation claims. This is a flaw that cannot be remedied by amendment. Thus, Defendants' motion to dismiss those claims is granted.

## IV. <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion to Dismiss (Dkt. 45) is granted. Plaintiff's complaint is dismissed with prejudice. All pending motions are denied as moot. The Clerk of Court is instructed to close the file.

**DONE AND ORDERED** at Tampa, Florida, on February 21, 2019.


_____s/ *William F. Jung*_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**


<u>COPIES FURNISHED TO</u>:
Counsel of Record
Plaintiff, pro se